# FOR PUBLICATION

FILED & ENTERED

JAN 18 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Pgarcia    DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Darin Davis,<br><br><div align="right">Debtor.</div> | CHAPTER 7<br><br>Case No.:  1:10-bk-17214-VK<br>Adv. No.:  1:10-ap-01354-VK<br><br>**MEMORANDUM OF DECISION RE DEFENDANT DARIN DAVIS'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS** |
| Asphalt Professionals Inc.,<br><br><div align="right">Plaintiff,</div><br>   v.<br><br>Darin Davis,<br><br><div align="right">Defendant.</div> | Hearing Dates:  September 17, 2018;<br>October 17, 2018; and<br>November 21, 2018<br><br>Location:  Courtroom 301<br>21041 Burbank Blvd.<br>Woodland Hills, CA 91367 |

## I. INTRODUCTION

In 2005, plaintiff Asphalt Professionals, Inc. ("API") sued defendant Darin Davis ("Davis") and T.O. IX, LLC ("T.O."), among others, for breach of a subcontract agreement and fraud, among other claims, in state court.  The subcontract agreement included a reciprocal

attorneys' fees provision; Davis was not a signatory to the agreement, but the agreement provided for T.O. to enforce all provisions of the agreement.  At all times, API alleged that T.O. is an alter ego of Davis.

After splitting the action into three phases, the state court ruled in API's favor on API's breach of contract claim and API's alter ego allegations, holding that T.O. is an alter ego of Davis.  Based on the subcontract agreement, the state court also awarded API attorneys' fees in connection with litigating the breach of contract claim, for which Davis was held liable.

During the parties' state court litigation, Davis filed a chapter 7 petition.  Subsequently, API filed a complaint to establish nondischargeability of its debt and denial of Davis's discharge. API's claim under 11 U.S.C. § 523(a)(2)(A) mirrored API's claim of fraud in state court; before the state court reached the fraud phase, this Court adjudicated API's claim under 11 U.S.C. § 523(a)(2)(A).  The Court entered judgment in favor of Davis on API's claims under 11 U.S.C. §§ 523 and 727.  Davis's motion for an award of attorneys' fees followed.

Davis asserts he is entitled to an award of attorneys' fees pursuant to the subcontract agreement and in accordance with California Civil Code § 1717 and/or California Code of Civil Procedure §§ 1021 and 1032.  API contends it is not liable for Davis's attorneys' fees because: (A) the action is not an "action on a contract" for purposes of California Civil Code § 1717; (B) the language of the subcontract agreement does not entitle Davis to an award of attorneys' fees; (C) Davis is not a prevailing party because API prevailed in state court; (D) Davis is not a signatory to the agreement; (E) the state court's alter ego holding does not entitle Davis to collect attorneys' fees pursuant to the subcontract agreement; and (F) Davis is barred from collecting attorneys' fees pursuant to California Business & Professions Code § 7031.   This Memorandum explains the Court's reasoning in awarding Davis his incurred attorneys' fees and costs with respect to this adversary proceeding.

## II. BACKGROUND

### A.  The Subcontract Agreement

On June 2, 2004, API, as the subcontractor, and an unidentified contractor (the "Contractor") entered into the subcontract agreement (the "Agreement").  In the Agreement,

T.O. was identified as the "Owner" and as a third-party beneficiary. *Id.* In relevant part, the Agreement (¶¶ 1, 23) provides:

> PARTIES: This Subcontract Agreement ("Agreement") is between Contractor and Subcontractor. Any references to "Owner" shall refer to T.O. IX, LLC. The Owner is an express third-party beneficiary to this Agreement. *Owner has the right to enforce the provisions of this Agreement against Subcontractor.* At any time Owner requests information it deems necessary from Subcontractor, Subcontractor agrees to provide such information within three (3) days of Owner's request. In the event Contractor's involvement in the Project terminates for any reason, Subcontractor will, upon Owner's written request, recognize Owner or any person or entity designated by Owner as the successor-in-interest to Contractor under this Agreement.
> …
>
> ATTORNEYS' FEES: In the event that Contractor prevails in any reference proceeding or court action arising out of this Agreement or the enforcement or breach thereof, or in any action brought against Subcontractor by third parties in which Contractor is joined as a party or interpleads, whether the same proceeds to judgment or not, Subcontractor agrees to pay to Contractor reasonable attorneys' fees. In the event that Subcontractor prevails in any reference proceeding or court action arising out of this Agreement or the enforcement or breach thereof, or in any action brought against Contractor by third parties in which Subcontractor is joined as a party or interpleads, whether the same proceeds to judgment or not, Contractor agrees to pay to Subcontractor reasonable attorneys' fees. The parties' covenants set forth in this Paragraph 23 shall survive and be enforceable following termination of this Agreement.

### B. The State Court Action

On September 29, 2005, after T.O. did not pay API for all of API's work on a project, API sued T.O., Davis and others in state court (the "State Court Action"). In the State Court Action, API asserted claims of breach of contract, foreclosure of a mechanic's lien, quantum meruit and fraud. Throughout its fourth amended complaint filed in the state court (the "FAC"), API alleged that, at all times, T.O. was the alter ego of Davis, among others. API also alleged that on "June 2, 2004, [API] entered into a written contract *with defendants T.O., D and S, D & S Development, [Davis]*" and others. API alleged that all of these named defendants had breached the Agreement.

The trial court trifurcated the State Court Action into three trial phases, with the first phase involving API's causes of action for breach of contract, foreclosure on a mechanic's lien

and quantum meruit.  On October 29, 2010, after a bench trial, the state court entered a judgment

in favor of API and against T.O. on API's breach of contract, foreclosure of mechanic's lien and

quantum meruit claims (the "Phase One Judgment").

On January 18, 2011, after entry of the Phase One Judgment, the state court entered an

order against T.O. awarding API attorneys' fees (the "Fees Order").  The state court based its

award on the attorneys' fees provision in the Agreement ("The attorney fee clause and only the

attorney fees clause can ultimately render the aggrieved party whole….").

The second phase of the State Court Action involved API's alter ego claims.  On

December 23, 2011, after trial, the state court issued a statement of decision on alter ego liability

(the "Alter Ego Judgment").  In relevant part, after making extensive findings, the state court

held:

> There is such a unity of interest and ownership that the separateness of defendants
> T.O. IX, LLC, D and S Homes, Inc., D & S Development, L.L.C., [Davis]… has
> ceased;
>
> Adherence to the separate existence of defendants D and S Homes, Inc., D & S
> Development, L.L.C., [Davis]… with T.O. IX, LLC, would, under the particular
> circumstances of this case, sanction a fraud or promote injustice; that is, if the acts
> are treated as those of T.O. IX, LLC alone, an inequitable result will follow;
>
> Defendants D and S Homes, Inc., D & S Development, L.L.C., [Davis]… are
> each the alter ego of defendant T.O. IX, LLC.
>
> The liability of the Interlocutory Judgment After Court Trial entered October 29,
> 2010 and of the Order Re Attorney Fees entered January 18, 2011 and any other
> or future order or orders awarding damages, punitive damages, *attorneys fees
> and/or costs* to [API] against T.O. IX, LLC in this case hereby is and will be
> extended to defendants D and S Homes, Inc., D & S Development, L.L.C.,
> [Davis]… jointly and severally, based upon the doctrine of *alter ego*….

(Emphasis added).  The Alter Ego Judgment was affirmed on appeal (the "Alter Ego Appellate

Decision").  In the Alter Ego Appellate Decision, the appellate court noted that:

> API signed the subcontract with T.O. IX but the agreement provides the parties
> are API, the subcontractor, and a "Contractor" that is not identified.  After signing
> the contract, API learned that T.O. IX was not the builder.  On August 11, 2005,
> Davis, the president of D & S Homes, notified API that he was terminating the
> T.O. IX contract.  In that letter he referred to that agreement as "our contract," not
> as T.O. IX's contract.

### C. Davis's Bankruptcy Case and the Adversary Proceeding

On June 15, 2010, Davis filed a voluntary chapter 7 petition.  On August 16, 2010, API filed a complaint against Davis (the "Adversary Complaint"), objecting to Davis's discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(4) and requesting nondischargeability of any debt owed to it pursuant to 11 U.S.C. § 523(a)(2)(A).  In the Adversary Complaint, API alleged:

> [Davis] falsely represented that he intended to act as a licensed general contractor for a proposed building project in Thousand Oaks.  [Davis] also falsely represented that he and various unlicensed entities he owned or controlled were "owner/builders" of the proposed building project, rather than licensed general contractors.  From 2003 until 2005, [Davis] and the unlicensed entities proceed to construct the subject real property.  [Davis] knew that, under California law, only a properly licensed general contractor could construct, or contract with other to construct, the subject real property.

> In 2004, [Davis] and entities he owned and controlled knowingly entered into the Agreement with [API] for labor, materials and services without disclosing that [Davis] and the entities he owned and controlled were unlicensed contractors and without disclosing that the construction engineering, surveying, plans and drawings provided to [API] were based on an inaccurate and incomplete 40-year-old "as built" survey.  Because of the incomplete and inaccurate information provided to [API], [API] was unable to construct a portion of the curbs, gutters and public roadways at the subject real property.

> Rather than disclose the truth about the survey, [Davis] (a) intentionally terminated the Agreement; (b) refused to pay [API] for past due labor, materials and services provided to date; (c) refused to pay [API] the agreed upon amount in the Agreement; (d) engaged the services of other sub-contractors to remove and replace the portion of the curbs, gutters and public roadways that [API] could not construct; and (e) back-charged [API] for an amount in excess of the cost [Davis] incurred to construct the improvements.

> Had [Davis] disclosed that the subject real property was constructed in violation of California law or that the plans provided to [API] were inaccurate or incomplete, [API] would not have entered into the Agreement.  Through [Davis's] express and implied representations, [Davis] was able to deceive [API] into entering into the Agreement with T.O.  As a result, [API] requests a nondischargeable judgment against [Davis] in the amount of $1 million plus interest accrued on said amount to the date of payment, plus the costs of this proceeding and attorney's fees incurred by [API] in this adversary proceeding.

Aside from these allegations, the Adversary Complaint also included allegations that Davis did not accurately complete his bankruptcy schedules and statements and that, as a result, Davis should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(4).

API also continued to allege that Davis was a party to the Agreement. *See*, *e.g.* ("During 2004, *defendant* and entities he owned and controlled, knowingly entered into a sub-contract agreement with plaintiff….") (emphasis added).  In its prayer for relief, API requested attorneys' fees incurred by API during the course of the adversary proceeding.  On September 17, 2010, Davis filed an answer to the Complaint (the "Answer") [doc. 3].

On June 26, 2013, API filed an Acknowledgment of Satisfaction of Judgment (the "Satisfaction of Judgment") in state court.  Through the Satisfaction of Judgment and the stipulation attached thereto, API acknowledged that the Phase One Judgment and any attorneys' fees awarded to date had been paid in full.

The Court bifurcated this proceeding, such that the Court first heard API's claims under 11 U.S.C. § 727.  On December 23, 2014, the Court entered judgment in favor of Davis on API's claims under 11 U.S.C. § 727 [doc. 113].  The Court initially stayed the 11 U.S.C. § 523 portion of this adversary proceeding to await conclusion of the State Court Action.  On April 19, 2017, nearly seven years after Davis filed his chapter 7 petition, API and Davis appeared for a status conference.  At that time, the Court informed the parties that it would no longer delay prosecution of this adversary proceeding until the State Court Action was resolved.

On August 31, 2017, the parties filed a joint pretrial stipulation (the "JPS") [doc. 140].  In the JPS, the parties agreed that the Court would try the following issues of law, among others:

(a)      Whether or not, by reason of the false and misleading express and implied representations of [Davis] and by reason of [API's] reliance upon the truthfulness of the same, the obligation owed to [API] is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

(b)      Whether or not, as a result of the intentionally false and misleading representations of [Davis], [API's] Claim in the amount of $1,130,951.42 is allowed and nondischargeable.

(c)      Whether [Davis] had a legal duty to disclose to [API] that T.O. was not a California licensed general contractor.

(d)      Whether [Davis] had a legal duty to disclose to [API] that entities in control of the subject project were not licensed general contractors.

(e)       Whether [Davis] had a legal duty to disclose to [API] the age of any plans given to [API].

(f)       Whether [Davis] had a legal duty to disclose whether any plans given to [API] were inaccurate.

API also asserted that Davis was a party to the Agreement in both the JPS and a prior pretrial stipulation filed in this adversary proceeding [docs. 69, p.4, 140, p.4].  In both pretrial stipulations, API also continued to assert that T.O. and other entities were alter egos of Davis [docs. 69, pp. 6-7, 140, pp. 6-7].

### D.  *The Trial and Motion for an Award of Attorneys' Fees*

On April 23 and 24, 2018, the Court held trial on API's claim under 11 U.S.C. § 523(a)(2)(A).  At trial, the Court made several findings regarding the Agreement, including findings regarding how T.O. was characterized in the Agreement, how certain terms were defined, which contractor's license number was included in the Agreement, the nature of oral communications between the parties regarding licensure at the time the parties entered into the Agreement and the review of the as-built survey provided with the Agreement.

On June 13, 2018, the Court issued a decision after trial (the "Court's Decision") [doc. 219].  In the Court's Decision, the Court held that API did not establish that Davis made oral or written representations to API regarding T.O.'s license status or the age of the as-built survey before the parties entered into the Agreement.  The Court also held that any omission by Davis regarding the license status of T.O. or the age of the as-built survey was not fraudulent. *Id*.  On June 18, 2018, the Court entered judgment in favor of Davis [doc. 221].

On June 29, 2018, Davis filed a motion requesting attorneys' fees and costs pursuant to Cal. Civ. Code § 1717 and/or Cal. Code of Civ. Proc. ("CCP") §§ 1021 and 1032 (the "Motion") [doc. 228].  On September 17, 2018, the Court held a hearing on the Motion.  At that time, the Court continued the hearing to provide API an opportunity to brief issues API raised for the first time at the hearing on the Motion.  On October 3, 2018, API filed its supplemental brief [doc. 244].  API argued, for the first time over the course of the eight years of litigation between the

parties in this Court, that Davis is not a party to the Agreement.  API also asserted that B&P §

7031 bars Davis's recovery of attorneys' fees.

On October 17, 2018, the Court held a continued hearing on the Motion.  Although the

Court issued a ruling on Davis's entitlement to attorneys' fees, the Court continued the hearing

once more to provide Davis an opportunity to supplement the Motion with a declaration

regarding the fees Davis incurred defending against API's claim under 11 U.S.C. § 523.  On

November 21, 2018, the Court held a final hearing on the Motion.

### III. JURISDICTION

The Court has jurisdiction over the above-captioned adversary proceeding and the

Motion pursuant to 28 U.S.C. § 1334(b).  These matters have been referred to this Court pursuant

to 28 U.S.C. § 157.  This adversary proceeding and the Motion are core matters pursuant to 28

U.S.C. § 157(b)(2)(A), (B), (O).  The Court finds that it has constitutional authority to enter final

judgment on the Motion. *See Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475

(2011).

### IV. ANALYSIS

In federal courts, there is generally no right to attorneys' fees unless authorized by

contract or by statute. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257, 95

S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975) ("Other recent cases have also reaffirmed the general

rule that, absent statute or enforceable contract, litigants pay their own attorneys' fees.").

In *Cohen v. de la Cruz*, 523 U.S. 213, 218–20, 118 S.Ct. 1212, 1216-17, 140 L.Ed.2d 341

(1998), the Supreme Court of the United States interpreted the discharge exceptions under 11

U.S.C. § 523(a)(2)(A), (a)(4), (a)(6), and (a)(9) to encompass all liability arising on account of a

debtor's fraudulent conduct, including attorneys' fees and costs to which the creditors were

entitled under state law.  As such, "the determinative question for awarding attorney's fees is

whether the creditor would be able to recover the fee outside of bankruptcy under state or federal

law." *In re Hung Tan Pham*, 250 B.R. 93, 99 (B.A.P. 9th Cir. 2000).  Here, Davis cites Cal. Civ.

Code § 1717 and CCP §§ 1021 and 1032 as the operative state statutes.

### A. Cal. Civ. Code § 1717(a)

Pursuant to Cal. Civ. Code § 1717(a)—

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

"Civil Code § 1717 makes an otherwise unilateral contractual obligation to pay attorney's fees into a reciprocal one in an action on the contract but Civil Code § 1717 is not applicable in a tort action." *In re Bic Pho*, 2016 WL 1620375, at *3 (Bankr. N.D. Cal. Apr. 20, 2016); *see also In re Deuel*, 482 B.R. 323, 328 (Bankr. S.D. Cal. 2012) (holding that § 1717 applies only to fees incurred to litigate contract claims); *and Santisas v. Goodin*, 17 Cal.4th 599, 615 (1998) (same). To obtain fees pursuant to Cal. Civ. Code § 1717(a), "[t]hree conditions must be met." *In re Penrod*, 802 F.3d 1084, 1087 (9th Cir. 2015).

> First, the action in which the fees are incurred must be an action "on a contract," a phrase that is liberally construed. Second, the contract must contain a provision stating that attorney's fees incurred to enforce the contract shall be awarded either to one of the parties or to the prevailing party. And third, the party seeking fees must be the party who "prevail[ed] on the contract," meaning (with exceptions not relevant here) "the party who recovered a greater relief in the action on the contract." Cal. Civ. Code § 1717(b)(1).

*Id.*, at 1087-88 (internal citation omitted). "Under California law, an action is 'on a contract' when a party seeks to enforce, or avoid enforcement of, the provisions of the contract." *Id.*, at 1088.

Two recent decisions by the Ninth Circuit Court of Appeals shed light on which disputes fall within the purview of Cal. Civ. Code § 1717(a). In *Penrod*, prepetition, the debtor and a lender entered into an installment sale contract when the debtor purchased a vehicle. *Penrod*, 802 F.3d at 1086. The contract granted the lender a security interest in the vehicle. *Id.* The debtor then filed a chapter 13 petition and, in her proposed chapter 13 plan, bifurcated the lender's claim into a secured claim in the amount of $16,000 and an unsecured claim in the amount of $10,000. *Id.* The lender objected to the proposed chapter 13 plan, arguing that its entire claim

1    should be treated as secured in accordance with the "hanging paragraph" below 11 U.S.C. §

2    1325(a)(9). *Id*.  The bankruptcy court decided that the lender was entitled to a $19,000 secured

3    claim and a $7,000 unsecured claim. *Id*., at 1087.  The Bankruptcy Appellate Panel of the Ninth

4    Circuit (the "BAP") affirmed the bankruptcy court's ruling. *Id*.

5         The debtor then filed a motion to recover attorneys' fees she incurred opposing the

6    lender's objection to confirmation of her chapter 13 plan. *Id*.  The debtor relied on a provision in

7    the installment sale contract which read, "You will pay our reasonable costs to collect what you

8    owe, including attorney fees, court costs, collection agency fees, and fees paid for other

9    reasonable collection efforts." *Id*.  Pursuant to this language, the debtor argued she was entitled

10   to attorneys' fees under Cal. Civ. Code § 1717(a). *Id*.  The bankruptcy court disagreed, holding

11   that the action was not an action "on a contract" because the action at issue in *Penrod* turned on a

12   question of federal bankruptcy law. *Id*.  The district court affirmed the bankruptcy court. *Id*.  The

13   Ninth Circuit Court of Appeals disagreed, explaining that:

> [The lender] sought to enforce the provisions of its contract with [the debtor]
> when it objected to confirmation of her proposed Chapter 13 plan. The plan
> treated [the lender's] claim as only partially secured, but [the lender] insisted that
> it was entitled to have its claim treated as fully secured. The only possible source
> of that asserted right was the contract—in particular, the provision in which [the
> debtor] granted a security interest in her Taurus to secure "payment of all you owe
> on this contract." (Had the contract not granted [the lender] a security interest in
> the car, [the lender] could not have asserted a secured claim for *any* amount. *See*
> 11 U.S.C. § 506(a).) The security interest conveyed by the contract covered not
> just the funds [the debtor] borrowed to pay for the Taurus, but also the funds she
> borrowed to refinance the negative equity in the Explorer. The sole issue in the
> hanging-paragraph litigation was whether this provision of the contract should be
> enforced according to its terms, or whether its enforceability was limited by
> bankruptcy law to exclude the negative-equity portion of the loan. *See In re
> Penrod,* 611 F.3d at 1159–61 & n. 2. By prevailing in that litigation, [the debtor]
> obtained a ruling that precluded [the lender] from fully enforcing the terms of the
> contract.

*Id*., at 1088.  On this analysis, the Court of Appeals held the objection to the debtor's

confirmation of her chapter 13 plan qualified as an "action on a contract" for purposes of Cal.

Civ. Code § 1717(a). *Id*.

The Court of Appeals decided that the bankruptcy court's and district court's interpretation of Cal. Civ. Code § 1717(a) was too narrow. *Id.* Those courts had concluded that Cal. Civ. Code § 1717(a) "applies only if the party defeats enforcement under non-bankruptcy law" and, because the debtor had prevailed under bankruptcy law, Cal. Civ. Code § 1717(a) did not apply. *Id.* The Court of Appeals held that California law did not prescribe any such limitation to Cal. Civ. Code § 1717(a). *Id.*, at 1089.

After *Penrod*, the Ninth Circuit Court of Appeals issued a decision further clarifying the boundaries of Cal. Civ. Code § 1717(a). *Bos v. Bd. of Trustees*, 818 F.3d 486 (9th Cir. 2016). In *Bos*, the debtor was an employer obligated to make payments to certain employee pension funds administered by the Board of Trustees in accordance with trust agreements. *Id.*, at 488. The debtor failed to make the requirement payments and, as a result, signed a promissory note agreeing to make monthly contributions to the funds and personally guaranteeing the payments. *Id.* The debtor was unable to make these payments. *Id.* An arbitrator ruled the debtor had violated the agreements, and the arbitration award was confirmed in a judgment. *Id.*

The debtor filed a chapter 7 petition. *Id.* The Board of Trustees filed an adversary proceeding requesting nondischargeability of the judgment pursuant to 11 U.S.C. § 523(a)(4). *Id.* The bankruptcy court held that the judgment was nondischargeable under 11 U.S.C. § 523(a)(4) because the debtor was a fiduciary under the Employee Retirement Income Security Act ("ERISA"). *Id.*, at 489. The district court affirmed. *Id.* On appeal, the Court of Appeals reversed, holding that the debtor was not a fiduciary under ERISA and that 11 U.S.C. § 523(a)(4) did not apply to the debtor. *Id.* The debtor then moved to recover attorneys' fees pursuant to Cal. Civ. Code § 1717 and, alternatively, under ERISA. *Id.*

The Court of Appeals first referenced several prior decisions by the BAP and California courts:

> The California Supreme Court has explained that "section 1717 applies only to actions that contain at least one contract claim," and that "[i]f an action asserts both contract and tort or other noncontract claims, section 1717 applies only to attorney fees incurred to litigate the contract claims." *Santisas,* 17 Cal.4th at 615, 71 Cal.Rptr.2d 830, 951 P.2d 399. Consistent with *Santisas,* we have previously held that a nondischargeability action is "on a contract" within section 1717 if

"the bankruptcy court needed to determine the enforceability of the ... agreement to determine dischargeability." *In re Baroff,* 105 F.3d 439, 442 (9th Cir. 1997).

The Bankruptcy Appellate Panel of the Ninth Circuit has held that *Santisas* and relevant Ninth Circuit cases establish not just a rule of inclusion, but also a rule of exclusion: that "if the bankruptcy court did *not* need to determine whether the contract was enforceable, then the dischargeability claim is *not* an action on the contract within the meaning of [California Civil Code] § 1717." *In re Davison,* 289 B.R. 716, 723 (9th Cir. BAP 2003) (emphasis added).

*Id*. The Court of Appeals then adopted the BAP's interpretation of Cal. Civ. Code § 1717, noting that the construction "accords with the common sense meaning of the phrase 'on a contract' and finds ample support in our precedents." *Id*., at 490. The *Bos* court then cited three prior decisions by the Court of Appeals that supported the BAP's interpretation above. *Id*.

First, the Court of Appeals cited *In re Johnson*, 756 F.2d 738 (9th Cir. 1985), for the proposition that an action is not an action "on a contract" if "the action neither litigated the validity of the contract nor required the bankruptcy court to consider 'the state law governing contractual relationships.'" *Bos*, 818 F.3d at 490 (citing *Johnson*, 756 F.2d at 740). "More broadly, [the Court of Appeals] instructed that when federal and not state law governs the substantive issues involved in the adversary proceeding, [the court] may not award attorney's fees pursuant to a state statute." *Id*. (citing *Johnson*, 756 F.2d at 741).

Next, the Court of Appeals cited *In re Fulwiler*, 624 F.2d 908 (9th Cir. 1980), in which the Court of Appeals held that a nondischargeability action in bankruptcy was not "on a contract" under an Oregon fee-shifting statute identical to Cal. Civ. Code § 1717. "The reason, we later explained, was that 'the bankruptcy court did not adjudicate the validity of the note in determining whether the debt was dischargeable,' and so the note was merely 'collateral to the non-dischargeability proceeding.'" *Bos*, 818 F.3d at 490 (citing *Baroff*, 105 F.3d at 442 (citing *Fulwiler*, 524 F.2d at 909-10)).

Finally, the Court of Appeals referenced *In re Hashemi*, 104 F.3d 1122 (9th Cir. 1996), in which the Court of Appeals held that "a creditor's 'dischargeability claim [was] not an action on the contract,' within the meaning of the contract itself, because 'the bankruptcy court did not

need to determine the enforceability of the … agreement to determine dischargeability.'" *Bos*,

818 F.3d at 490 (quoting *Hashemi*, 104 F.3d at 1126).

Based on these authorities, the *Bos* court explained:

In light of our precedents, we are persuaded that the action underlying Bos's fee request—the nondischargeability proceeding that began in bankruptcy court—was not an action "on a contract" within the meaning of section 1717. As the parties agree, "[t]here was no 'breach of contract' claim in the Trust Funds' adversary complaint." The nondischargeability proceeding arose entirely under the federal Bankruptcy Code, and in no way required the bankruptcy court to determine whether or to what extent the Trust Agreements or the Note were enforceable against Bos, or whether Bos had violated their terms. Those questions had been answered in arbitration, and confirmed by a State Court; indeed, in the nondischargeability action Bos conceded that such contracts were valid and that he had breached them. The litigation from that point forward asked only whether federal bankruptcy law forbade Bos from discharging the debts everyone agreed he owed to the Funds. Such litigation is collateral to a contract rather than "on a contract," and as a consequence Bos may not use section 1717 to recover the fees he incurred in pursuing it.

*Id*. The *Bos* court distinguished *Penrod* on the basis that, in *Penrod*, the central question

presented to the court was whether the court should enforce a provision in the parties' agreement

or whether the debtor could avoid enforcement in accordance with the Bankruptcy Code. *Id*., at

490-91. In *Bos*, the nondischargeability issue did not present any issues regarding the validity or

enforceability of the subject agreement. *Id*., at 491.

After *Bos*, a bankruptcy court within the Ninth Circuit addressed the issue of whether a

nondischargeability action under 11 U.S.C. § 523(a)(2)(A) may be considered an action "on a

contract" for purposes of Cal. Civ. Code § 1717. *In re Zarate*, 567 B.R. 176 (Bankr. N.D. Cal.

2017). In *Zarate*, creditors initiated an adversary proceeding against the debtors alleging that the

debtors "'misrepresented facts, concealed and failed to disclose' material facts in order to induce

plaintiffs to enter into the" subject agreement. *Id*., at 181. The creditors requested damages in

the amount of $1.34 million plus prejudgment interest, contractual attorneys' fees and costs. *Id*.

Subsequently, the court entered a stipulated judgment through which the debtors agreed to a

nondischargeable judgment in the amount of $831,018.31. *Id*. The creditors then filed a motion

for an award of attorneys' fees based on the parties' contract, which included a provision that

stated: "In event suit is brought or an attorney is retained by any party to this Agreement to

enforce the terms of this Agreement or to collect any moneys due hereunder, the prevailing party shall be entitled to recover reimbursement for reasonable attorneys' fees, court costs, costs of investigation and other related expenses incurred in connection therewith." *Id.*, at 181-83.

The *Zarate* court first noted that "under established California law, a tort claim does not 'enforce' a contract." *Id.*, at 184 (citing *Stout v. Turney*, 22 Cal.3d 718, 730 (1978); *and Santisas*, 17 Cal.4th at 615). Next, the court held that "the dischargeability of a debt under § 523(a)(2)(A) resolves a tort claim." *Id.* (citing *In re Candland*, 90 F.3d 1466, 1470 (9th Cir. 1996)). The court held that, unlike *Penrod*, the court did not have to assess the enforceability of the subject agreement in *Zarate*:

> Here, whether the APA or the 2009 Agreement were enforceable was never a question and the interpretation of these agreements was never an issue. Based on the above, this was not an action on a contract. The APA and the 2009 Agreement provided the context out of which this dispute arose, but this was not an action on a contract. Civil Code § 1717 does not provide a basis to award attorney's fees.

*Id.*, at 185. *See also Fulwiler*, 624 F.2d at 909-10 (holding that the action was not "on the contract" where the bankruptcy court "did not adjudicate the validity of the note in determining whether the debt was dischargeable" and instead determined "that the debtors obtained the loan evidenced by the note through fraud"); *cf. Baroff*, 105 F.3d at 442 (holding an action was "on a contract" where "the bankruptcy court needed to determine the enforceability of the settlement agreement to determine dischargeability").

Here, as in *Bos*, the contract issues were previously decided by the state court, as set forth in the Phase One Judgment. This Court was presented with one issue: whether Davis committed fraud in connection with the execution of the Agreement. To adjudicate this issue, the Court did not need to assess the validity or enforceability of any provision in the Agreement. Neither API nor Davis disputed any provision in the Agreement during the course of this adversary proceeding; the Complaint focused on representations and omissions allegedly made by Davis in connection with entering into the Agreement. The Answer also did not raise any affirmative defenses that called into question any provision in the Agreement. As such, this case is more

similar to *Bos*, *Zarate* and *Fulwiler*, and is readily distinguishable from the contract enforcement issues presented to the *Baroff* court.

### B. CCP §§ 1021 and 1032

Although Davis is not entitled to attorneys' fees pursuant to Cal. Civ. Code § 1717, Davis is entitled to attorneys' fees through CCP § 1021. Pursuant to CCP § 1021—

> Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided.

Pursuant to CCP § 1032(b)—

> Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding.

Under CCP § 1033.5(a), the following items are allowable as costs pursuant to § 1032:

> (10)    Attorney's fees, when authorized by any of the following:
>
> (A) Contract.
> (B) Statute.
> (C) Law.

CCP "§ 1032(b) entitles a 'prevailing party' to 'recover costs' as a matter of right 'in any action or proceeding.' Costs may include attorney's fees when authorized by contract, even when the action is not 'on a contract.'" *In re Mac-Go Corp.*, 541 B.R. 706, 715 (Bankr. N.D. Cal. 2015) (citing CCP § 1033.5(a)(10)).

### 1. The Language of the Agreement

Here, the relevant provision in the Agreement (¶ 23) states: "In the event that Contractor prevails in *any reference proceeding or court action arising out of this Agreement* or the enforcement or breach thereof…whether the same proceeds to judgment or not, Subcontractor agrees to pay to Contractor reasonable attorneys' fees." (Emphasis added). If this language encompasses tort actions as well as contract actions, then Davis, as the prevailing party (discussed below), is entitled to collect reasonable attorneys' fees from API.

Several California courts have held that the phrase "arising out of" is broad enough to encompass both tort and contract actions. In *Xuereb v. Marcus & Millichap, Inc.*, 3 Cal.App.4th

1338, 1341 (Ct. App. 1992), the plaintiffs filed suit against the defendants, alleging negligence,

products liability, fraud and misrepresentation and breach of contract. *Xuereb*, 3 Cal.App.4th at

1341.  The allegations in the complaint involved a real estate purchase agreement through which

the defendants, a real estate broker and real estate agent, sold real estate to the plaintiffs. *Id*., at

1340.  In relevant part, the plaintiffs alleged that the defendants omitted information or made

misstatements prior to the execution of the purchase agreement. *Id*., at 1343.  The purchase

agreement included the following attorneys' fees provision: "Attorneys' Fees: If this Agreement

gives rise to a lawsuit or other legal proceeding between any of the parties hereto, including

Agent, the prevailing party shall be entitled to recover actual court costs and reasonable

attorneys' fees in addition to any other relief to which such party may be entitled." *Id*.

The action went to trial on the theories of negligence, breach of fiduciary duty,

concealment and misrepresentation, but not on breach of contract. *Id*., at 1341.  The jury returned

a verdict in favor of the plaintiffs, who then moved for an award of attorneys' fees pursuant to

the purchase agreement. *Id*.  The trial court denied the plaintiffs' motion, holding that the

plaintiffs were not entitled to attorneys' fees under Cal. Civ. Code § 1717. *Id*.  The plaintiffs

appealed. *Id*.

On appeal, the California appellate court first noted that Cal. Civ. Code § 1717 did not

govern the issue of attorneys' fees because the action was not an action "on a contract" as

required by Cal. Civ. Code § 1717. *Id*., at 1342.  Instead, the court found that the relevant statute

was CCP § 1021, which allows for an award of attorneys' fees in tort actions if the language in

the parties' agreement is broad enough to provide for such an award. *Id*.  In assessing the

language of the attorneys' fees provision in the purchase agreement, the court was faced with

facts analogous to the facts before this Court:

> The critical question, under the language of the parties' attorney fees agreement,
> is whether respondents' lawsuit *arose from* the Purchase Agreement. Appellants
> argue that the phrase "[i]f this Agreement *gives rise to* a lawsuit or other legal
> proceeding" (our italics) must be interpreted in a transactional sense; that is, in the
> sense that the litigation has arisen from the entirety of the circumstances of the
> real estate transaction of which the Purchase Agreement was the defining
> statement. Respondents, on the other hand, contend that their dispute with
> appellants cannot be said to have arisen from the Purchase Agreement, because
> the alleged actions, omissions, or misstatements with which that dispute was

-16-

> concerned, all occurred prior to the execution of the Purchase Agreement. In short, respondents focus on the chronology of the events in relation to the actual execution of the Purchase Agreement, while appellants more broadly address the entire transaction, of which the Purchase Agreement was the written memorandum.

*Id*. The court held that the action could properly be regarded "as having arisen from" the purchase agreement even under the defendants' narrower interpretation of the language, because the purchase agreement provided for certain inspections after the signing of the agreement, which inspections were allegedly deficient and partly formed the basis of the plaintiffs' lawsuit against the defendants. *Id*., at 1343-44. However, the court held that the plaintiffs' broader interpretation of the language was accurate:

> In any case, we must apply the rule that words in a contract are to be understood in their usual sense. (Civ. Code, § 1644.) In our opinion, appellants' interpretation more fairly reflects the ordinary and usual sense of the phrase "gives rise to," which the parties agreed to in the Purchase Agreement. In ordinary popular speech, as well as in legal opinions, it is common to use the phrase "arises from" or "arises out of" in a far more general, transactional sense than is suggested by phrases such as "derives from" or "proximately caused by."

*Id*., at 1344. The *Xuereb* court further explained:

> Appellants' interpretation is also buttressed by the interpretational principle that a contract must be understood with reference to the circumstances under which it was made and the matter to which it relates. (Civ. Code, § 1647.) The circumstances of the Purchase Agreement and the matter to which it related was a large real property transaction, in which the buyer and the seller made certain reciprocal agreements with respect to the inspection of the premises and a variety of contingencies which were supposed to take place prior to the close of escrow. It was out of these contingencies, or the alleged failure thereof, that the lawsuit arose. The attorney fees provision specifically included the "Agent" among the parties with respect to which disputes could arise that would trigger a right to attorney fees. In light of all these circumstances, we conclude that the phrase "gives rise to" must be interpreted expansively, to encompass acts and omissions occurring in connection with the Purchase Agreement and the entire transaction of which it was the written memorandum.

*Id*.

Post-*Xuereb*, several courts have afforded the same broad interpretation to comparable attorneys' fees provisions. For instance, in *Lerner v. Ward*, 13 Cal.App.4th 155 (Ct. App. 1993), the plaintiffs sued the defendants for falsely representing that the real property they purchased

from the defendants could be subdivided. *Lerner*, 13 Cal.App.4th at 157. The purchase

agreement included an attorneys' fees provision awarding attorneys' fees to the prevailing party

on any action "arising out of the agreement." *Id*., at 160. Although the complaint included

causes of action for breach of contract and reformation, the court held trial only on the plaintiffs'

fraud cause of action. *Id*. The jury returned a verdict in favor of the defendants, who then moved

for an award of attorneys' fees. *Id*. The trial court denied the motion, holding that the fees were

not recoverable in a tort action under Cal. Civ. Code § 1717. *Id*., at 158. The defendants

appealed the ruling. *Id*.

The appellate court agreed that the defendants were not entitled to attorneys' fees under

Cal. Civ. Code § 1717, because the fraud action was not "on a contract." *Id*., at 159. However,

the appellate court held that the defendants were entitled to fees pursuant to CCP § 1021. Citing

the reasoning in *Xuereb*, the court held:

> In the instant case, the clause in the contract concerning attorney fees was similar
> to the clause in the *Xuereb* case. The clause was not limited merely to an action
> on the contract, but to any action or proceeding arising out of the agreement. This
> included any action for fraud arising out of that agreement.
>
> It is true when the Lerners voluntarily dismissed their contract cause of action
> before trial and proceeded only on a tort theory, they gave up the opportunity to
> obtain attorney fees pursuant to Civil Code section 1717. They still, however, had
> the opportunity to obtain attorney fees pursuant to Code of Civil Procedure
> section 1021. This is because the tort cause of action arose out of the written
> agreement. The Lerners alleged and tried to prove that the Wards, through their
> fraudulent representations, induced the Lerners to enter into an agreement to
> purchase the property.

*Id*., at 160.

Notably, the California Supreme Court cited approvingly to *Xuereb* and *Lerner* in another

action involving a real estate purchase agreement containing the following attorneys' fees

provision: "In the event legal action is instituted by the Broker(s), or any party to this agreement,

*or arising out of the execution of this agreement or the sale*, or to collect commissions, the

prevailing party shall be entitled to receive from the other party a reasonable attorney fee to be

determined by the court in which such action is brought." *Santisas*, 17 Cal.4th at 603 (emphasis

added).  The California Supreme Court, referencing *Xuereb* and *Lerner*, noted that the language

in the agreement was broad enough to cover both contract and tort actions:

> On its face, the provision embraces all claims, both tort and breach of contract, in
> plaintiffs' complaint, because all are claims "arising out of the execution of th[e]
> agreement or the sale." (See *Lerner v. Ward* (1993) 13 Cal.App.4th 155, 160–161,
> 16 Cal.Rptr.2d 486.) Plaintiffs do not argue otherwise. If a contractual attorney
> fee provision is phrased broadly enough, as this one is, it may support an award of
> attorney fees to the prevailing party in an action alleging both contract and tort
> claims: "[P]arties may validly agree that the prevailing party will be awarded
> attorney fees incurred in any litigation between themselves, whether such
> litigation sounds in tort or in contract." (*Xuereb v. Marcus & Millichap,
> Inc.* (1992) 3 Cal.App.4th 1338, 1341, 5 Cal.Rptr.2d 154.)

*Id.*, at 405. *See also Zarate*, 567 B.R. at 183 (holding that provisions that limit collection of fees

to actions to "enforce" or "interpret" an agreement do not give rise to tort actions, but

"provisions with broader language – suits *arising from* or with respect to the subject matter or

enforcement of a contract – have been held to extend to fees incurred in litigating tort claims")

(emphasis added); *Maynard v. BTI Grp., Inc.*, 216 Cal.App.4th 984, 993 (Ct. App. 2013) ("Like

provisions referring to any claim 'in connection with' a particular agreement, *or to any action

'arising out of' an agreement*, an attorney fee provision awarding fees based on the outcome of

'any dispute' encompasses all claims, whether in contract, tort or otherwise.") (emphasis added);

*and Childers v. Edwards*, 48 Cal.App.4th 1544 (1996) (holding that the phrase "any legal action,

proceeding or arbitration *arising out of this agreement*" entitles the prevailing party to reasonable

attorneys' fees because the phrase covers tort actions) (emphasis added).

Here, like in *Lerner*, this Court adjudicated API's fraud claim under 11 U.S.C. §

523(a)(2)(A).  As in *Xuereb* and *Lerner*, the language in the Agreement is broad enough to

encompass this action.  The Agreement (¶ 23) provides for attorneys' fees in "any reference

proceeding or court action *arising out of this Agreement*." (Emphasis added).  The "arising out

of" language in the Agreement mirrors the language in the attorneys' fees provision in *Lerner*

and is the same phrase held by several courts to be broad enough to encompass tort actions.

The crux of API's claim under 11 U.S.C. § 523(a)(2)(A) was that Davis made material

misrepresentations and omissions on which API relied prior to execution of the Agreement.  A

necessary element of API's fraud theory was that API would not have entered into the

Agreement had API been aware of certain facts prior to execution of the Agreement.  Both
*Xuereb* and *Lerner* held that the fraudulent inducement allegations at issue in their cases arose
out of the subject agreements.  The same is true here; API's tort action against Davis rested on
the premise that API would not have entered into the Agreement had Davis disclosed certain
facts, such as T.O.'s license status and the age of the as-built survey.  API asserted that Davis
had a duty to disclose these facts.

It is unclear if Davis is requesting attorneys' fees related to litigation of API's claim
under 11 U.S.C. § 727.  In the Motion, Davis appears to except fees and costs incurred during the
11 U.S.C. § 727 trial from his request.  However, in his attached itemization of attorneys' fees,
Davis includes attorneys' fees incurred litigating API's claim under 11 U.S.C. § 727.

To the extent Davis is requesting attorneys' fees incurred defending the denial of
discharge claims, API's claims under § 727 were based on the omission of assets from Davis's
bankruptcy schedules and statements.  These allegations were unrelated to the Agreement, and
API could have brought the claims under 11 U.S.C. § 727 notwithstanding the Agreement.  In
other words, the denial of discharge claims did not "arise out of" the Agreement, and Davis is
not entitled to attorneys' fees incurred defending the § 727 claims.  However, for the reasons set
forth above, Davis *is* entitled to attorneys' fees incurred defending API's claim under 11 U.S.C.
§ 523(a)(2)(A).

### 2. Prevailing Party

API argues that Davis cannot be a prevailing party because API prevailed in state court.
Pursuant to CCP § 1032(a)(4)—

> "Prevailing party" includes the party with a net monetary recovery, a defendant in
> whose favor a dismissal is entered, a defendant where neither plaintiff nor
> defendant obtains any relief, and a defendant as against those plaintiffs who do
> not recover any relief against that defendant. When any party recovers other than
> monetary relief and in situations other than as specified, the "prevailing party"
> shall be as determined by the court, and under those circumstances, the court, in
> its discretion, may allow costs or not and, if allowed may apportion costs between
> the parties on the same or adverse sides pursuant to rules adopted under Section
> 1034.

"Where a party falls squarely within one of these four definitions, a trial court has little discretion in determining the prevailing party, particularly when there is a party with a 'net monetary recovery.'" *Mac-Go Corp.*, 541 B.R. at 715 (citing *Goodman v. Lozano*, 47 Cal.4th 1327 (2010)).  Otherwise, the statute "leaves the determination of the prevailing party to the trial court's discretion." *Heimlich v. Shivji*, 12 Cal.App.5th 152, 160 (Ct. App. 2017).

"[S]ection 1032(a)(4) defines the party with a 'net monetary recovery' as the 'prevailing party.'  The word 'recover' means 'to gain by legal process' or 'to obtain a final legal judgment in one's favor.'" *deSaulles v. Cmty. Hosp. of Monterey Peninsula*, 62 Cal.4th 1140, 1153 (2016) (citing *Goodman*, 47 Cal.4th at 1334).

API asserts that Davis cannot be the prevailing party because API was the prevailing party on the breach of contract action in state court.  However, API has cited no authority providing that where one party prevails in one action and recovers attorneys' fees based on the parties' contract, the other party is barred from recovering attorneys' fees based on the contract in all future actions.  API did prevail on its breach of contract action in state court, and the state court awarded API attorneys' fees as a result.

However, this nondischargeability action is distinct from the state court action.  The state court did not adjudicate the issues of fraud or nondischargeability.  In this action, Davis is the prevailing party because Davis "falls squarely" within one of the "prevailing party" definitions under CCP § 1032(a)(4): Davis is "a defendant as against those plaintiffs who do not recover any relief against that defendant."  Where a party fits a definition provided by CCP § 1032(a)(4), the court "has little discretion" in deeming that party the prevailing party. *Mac-Go Corp.*, 541 B.R. at 715.

Even if Davis did not neatly fall into one of the categories under CCP § 1032(a)(4), the court is given discretion to determine the prevailing party and allow costs as the court sees fit.  CCP § 1032(a)(4); *Heimlich*, 12 Cal.App.5th at 160.  To the extent API views the state court action and this action as one action, where API prevailed on the breach of contract claims and Davis on the fraud and nondischargeability claims, the Court still would award Davis his attorneys' fees and costs incurred defending the § 523(a)(2)(A) claim.  API obtained a significant

attorneys' fees award of $1.65 million after prevailing on its breach of contract claims.  Now that
Davis has prevailed on the nondischargeability claim, and in light of the fact that courts are
permitted to "apportion costs between the parties," Davis is entitled to his share of attorneys'
fees under the Agreement.  Consequently, having prevailed as to API's claim under 11 U.S.C. §
523(a)(2)(A), Davis is entitled to an award of reasonable attorneys' fees and costs.

### C.  *The State Court Held that Davis Effectively Is a Party to the Agreement*

API asserts that the state trial and appellate courts found that Davis was not a party to the
Agreement.  To support its argument, API refers to the appellate court's comment that the
Agreement was between API and "a 'Contractor' that is not identified."  Although the appellate
court did note that the Agreement did not identify the "Contractor," neither the appellate court
nor the trial court held that Davis was not a party to the Agreement.

In fact, the trial court implicitly found that Davis *is* a party to the Agreement.  In its Fees
Order, the state trial court awarded API attorneys' fees based on the attorneys' fees provision in
the Agreement.  Subsequently, in its Alter Ego Judgment, the trial court held that Davis, among
others, was liable for the attorneys' fees because Davis was an alter ego of multiple other
entities, including T.O.  Given that the state court held that Davis, among others, is liable for
API's attorneys' fees pursuant to the Agreement, the state court necessarily found that Davis,
among other entities, qualifies as a party for purposes of the Agreement.

This conclusion is bolstered by the state trial court's entry of the Alter Ego Judgment.
API argued for, and the state court found, alter ego liability for the purpose of holding Davis,
among others, liable for breach of the Agreement although Davis, as an individual, is not a
signatory to the Agreement.

### D.  *California Law Allows for Recovery of Attorneys' Fees by Nonsignatory Defendants*

"In cases involving nonsignatories to a contract with an attorney fee provision, the
following rule may be distilled from the applicable cases: A party is entitled to recover its
attorney fees pursuant to a contractual provision only when the party would have been liable for
the fees of the opposing party if the opposing party had prevailed." *Dell Merk, Inc. v. Franzia*,
132 Cal.App.4th 443, 451 (Ct. App. 2005).

The line of cases allowing recovery of attorneys' fees by nonsignatory defendants has been developed under Cal. Civ. Code § 1717(a).  In *Reynolds Metals Co. v. Alperson*, 25 Cal.3d 124 (1979), the Supreme Court of California held that the mandate of reciprocity set forth in Cal. Civ. Code § 1717(a) ensured that, where a plaintiff sued a nonsignatory defendant to hold the defendant liable on the contract, and the defendant prevailed, the nonsignatory defendant could use an attorneys' fees provision from the contract to recover the defendant's attorneys' fees. Based on *Reynolds*, nonsignatory defendants have been allowed to recover attorneys' fees in accordance with Cal. Civ. Code § 1717(a). *See, e.g. Burkhalter Kessler Clement & George LLP v. Hamilton*, 19 Cal.App.5th 38 (Ct. App. 2018).

Here, the Court has determined that Cal. Civ. Code § 1717(a) does not apply to this action; rather, Davis may recover his attorneys' fees pursuant to Cal. Civ. Code §§ 1021 and 1032.  Nevertheless, the Court may apply the reasoning of *Reynolds* to this case.

The Agreement's attorneys' fees provision (¶ 23) states:

> In the event that Contractor prevails in any reference proceeding or court action arising out of this Agreement or the enforcement or breach thereof … Subcontractor agrees to pay to Contractor reasonable attorneys' fees.  In the event that Subcontractor prevails in any reference proceeding or court action arising out of this Agreement or the enforcement or breach thereof … Contractor agrees to pay to Subcontractor reasonable attorneys' fees.

Based on this language, API contracted for reciprocity as to liability for attorneys' fees.  Had API prevailed on its nondischargeability claim, because of the Alter Ego Judgment, API would have been able to collect its award of attorneys' fees from Davis.  In fact, in the Adversary Complaint, API requested an award of attorneys' fees; for a nondischargeability claim under § 523(a)(2)(A), API's bases to obtain an award of attorneys' fees are the Agreement's attorneys' fees provision **and** the Alter Ego Judgment.  Based on the authorities above, as a prevailing party, Davis may receive an award of attorneys' fees under the Agreement.

Although API now argues that the term "Contractor" is too vague to allow for Davis's recovery of attorneys' fees, the Agreement (¶ 1) explicitly provides T.O. the right to enforce any provision in the Agreement, including the attorneys' fees provision:

> This Subcontract Agreement ("Agreement") is between Contractor and Subcontractor.  Any references to "Owner" shall refer to T.O. IX, LLC.  The

-23-

Owner is an express third-party beneficiary to this Agreement. *Owner has the right to enforce the provisions of this Agreement against Subcontractor*.

(Emphasis added). In light of this provision, API agreed that T.O. would have the right to enforce any provision of the Agreement. Because the state court held that T.O. is an alter ego of Davis, Davis also has a right to enforce any provision of the Agreement. As such, Davis is entitled to an award of attorneys' fees because: (A) API contracted for reciprocity; (B) API agreed that T.O. has the ability to enforce any provision in the Agreement; (C) the state trial court held, and the state appellate court affirmed, that T.O. is an alter ego of Davis; and (D) had API prevailed, API would have been able to recover its attorneys' fees from Davis.

Because the state court determined that Davis would be properly treated as an alter ego of T.O., API became entitled to recover its breach of contract damages, and related attorneys' fees, from Davis. As this Court previously noted, API's judgment for breach of contract damages and attorneys' fees against Davis (and others) has been paid in full. Moreover, during the course of this adversary proceeding, API continued to refer to Davis as a party to the Agreement.

*Reynolds* and its progeny, under comparable circumstances, allow nonsignatory defendants to collect attorneys' fees. *See, e.g. Burkhalter Kessler*, 19 Cal.App.5th at 46 n.2 ("This case raises an interesting tactical issue: whether a plaintiff should plead an alter ego defendant in the initial complaint (and risk a dismissal with prejudice and possible payment of attorney fees); or should a plaintiff hold off and later seek to amend a prevailing judgment. We take no position on the tactical choice, though we do recollect Ralph Waldo Emerson's cautionary note that: 'When you strike at a king, you must kill him.'").

The Court concludes that there is no equitable basis to bar Davis's recovery of attorneys' fees, under the Agreement. API has recovered its breach of contract damages, including attorneys' fees incurred during the state court litigation. Following the payment in full of that award, API pursued a claim of nondischargeability under 11 U.S.C. § 523(a)(2)(A). To defend against API's § 523(a)(2)(A) claim, Davis incurred his own attorneys' fees and costs. Consequently, when assessing Davis's right to payment of his attorneys' fees, the Court will take into account the Alter Ego Judgment, which treats Davis as a party to the Agreement.

### E. API is Judicially Estopped from Arguing that Davis is Not a Party to the Agreement

According to the Supreme Court of the United States—

Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment.

*New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S.Ct. 1808, 1814, 148 L.Ed.2d 968 (2001) (internal quotations omitted). "The doctrine extends to incompatible statements and positions in different cases." *In re Associated Vintage Grp., Inc.*, 283 B.R. 549, 566 (B.A.P. 9th Cir. 2002) (citing *Risetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 605 (9th Cir. 1996)). Courts consider the following factors when applying the doctrine of judicial estoppel:

First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire*, 523 U.S. at 750-51 (internal quotations omitted).

Here, API repeatedly contended that Davis is a party to the Agreement and that Davis is an alter ego of several entities, including T.O.  API succeeded in persuading the state court of its position: consequently, the state court held Davis responsible for breach of contract damages arising from the Agreement, and for payment of API's attorneys' fees pursuant to the

Agreement's applicable provisions.  API's prior position that Davis is a party to the Agreement (and consequently liable for breach of contract damages and API's related attorneys' fees) is inconsistent with API's current position that Davis is not a party to the Agreement and thus may not receive an award of attorneys' fees, under the Agreement.

Finally, API would derive an unfair advantage if API were allowed to maintain its inconsistent position.  API, having obtained a holding that Davis is liable for breach of the Agreement and for the payment of API's attorneys' fees (in accordance with the Agreement), may not avoid the consequences of the same contractual provisions when Davis constitutes the prevailing party.  As a result, API is judicially estopped from arguing that Davis cannot avail himself of the attorneys' fee provision in the Agreement.

### F.  B&P § 7031 Does Not Bar Davis's Recovery of Attorneys' Fees

Pursuant to B&P § 7031—

(a)    Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state *for the collection of compensation for the performance of any act or contract where a license is required* by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract regardless of the merits of the cause of action brought by the person, except that this prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029.

(b)    Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state *to recover all compensation paid to the unlicensed contractor for performance of any act or contract.*

B&P § 7031(a), (b) (emphases added).  B&P § 7031 plainly is not applicable to the facts here. Davis is not attempting to recover compensation for work he performed as a contractor.  Davis is attempting to recover attorneys' fees he has incurred in defending API's claim of nondischargeability *against Davis*.  Moreover, Davis himself *is* a licensed contractor.

The single case cited by API does not state otherwise.  In *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co.*, 36 Cal.4th 412 (2005), a subcontractor sued a contractor for breach of contract for work the subcontractor performed for the contractor, and the

contractor used B&P § 7031 as a defense by asserting that the subcontractor was not properly licensed when the subcontractor performed the work. *See also Hydrotech Sys., Ltd. v. Oasis Waterpark*, 52 Cal.3d 988, 992 (1991) (holding that unlicensed contractor cannot receive compensation for its services under B&P § 7031). Here, neither T.O. nor Davis is attempting to recover compensation for work performed as a contractor. As such, *MW Erectors* and *Hydrotech* are inapplicable to this case.

## V. CONCLUSION

Davis is entitled to an award of attorneys' fees pursuant to the Agreement and CCP §§ 1021 and 1032. As such, for the reasons stated on the docket [docs. 248, 254], the Court will award Davis $91,390.92 in attorneys' fees and $956.87 in costs.

###

Date: January 18, 2019

Victoria S. Kaufman
United States Bankruptcy Judge